FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2012 JUN -5 P 12: 15

CLERK'S OFFICE
AT GREENBELT

BY RC            DEPUTY

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
GREENBELT DIVISION**

| | |
|---|---|
| ACCUVANT, INC., | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) |
| | ) |
| MEGADATA TECHNOLOGY, LLC, | ) |
| | ) |
| *Serve*: Rob Stringfellow, CEO | ) |
| 11008 Captains View Lane | ) |
| Fort Washington, MD 20744 | ) |
| | ) |
| **Defendant.** | ) |

Civil Action No.: ___AW 12 CV 1647

## COMPLAINT

Plaintiff, Accuvant, Inc. ("Accuvant") by counsel, brings the following Complaint for

relief against Defendant Megadata Technology, LLC ("Megadata").

### NATURE OF THE CASE

1.      Accuvant, a Delaware corporation, brings this Complaint against Megadata, a

Maryland corporation, to recover amounts owed from Megadata for products and services sold to

Megadata by Accuvant pursuant to a series of purchase orders and invoices.  Between February

and December of 2011, Accuvant made numerous demands to Megadata for payment of

outstanding invoices.  Despite those demands – including one to Megadata's counsel – Megadata

has still not paid Accuvant the full amount it owes.  As set forth below, Megadata's refusal to

provide payment to Accuvant constitutes a breach of contract and has unjustly enriched

Megadata in an amount to be proven at trial but believed to exceed $100,000.

### JURISDICTION AND VENUE

2.      The jurisdiction of this Court to hear this action is found in 28 U.S.C. § 1332,

which authorizes federal courts to hear cases where there is diversity of citizenship among the

parties and where the value of the matter in controversy exceeds seventy-five thousand dollars ($75,000), exclusive of interest and costs.

3.      Venue to have this action in this Court comes under 28 U.S.C. § 1391(b) because the wrongful conduct alleged in this Complaint occurred in the District of Maryland and the Defendant resides in this District.

## PARTIES

4.      Accuvant is a Delaware corporation with its principle place of business at 1125 17th Street, Suite 1700, Denver, Colorado 80202.  Accuvant also has an office in Hanover, Maryland.  Accuvant is a research-based cyber security consulting company.  It provides information security services, risk and compliance management services and a host of technology solutions to its clients and customers.

5.      Megadata is a Maryland limited liability company that provides consulting and subcontracting IT services to its clients and resells technology products to its customers. Megadata's principal place of business is at 11008 Captains View Lane, Fort Washington, Maryland 20744.

## FACTUAL ALLEGATIONS

6.      One of Accuvant's customers is TriWest Healthcare Alliance ("TriWest").

7.      For certain of TriWest's orders of Accuvant's products and services, TriWest engaged Megadata to serve as its intermediary reseller.

8.      Under this arrangement, TriWest placed its orders with Megadata for Accuvant's products or services.  Megadata, in turn, placed TriWest's order directly with Accuvant pursuant to its own purchase order.  Accuvant shipped the products directly to TriWest, in accordance

with Megadata's purchase order, and invoiced the products to Megadata who, in turn, invoiced the products back to TriWest.

9.     In addition to purchasing Accuvant's products through Megadata, TriWest also purchased other products directly from Accuvant from time to time.  These direct orders did not relate to TriWest's arrangement with Megadata.

10.     Between November 2010 and April 2011, Megadata issued a number of purchase orders to Accuvant pursuant to requests it received from TriWest.

11.     Upon receiving each purchase order from Megadata for TriWest, Accuvant shipped or otherwise delivered the ordered product and/or services and submitted corresponding invoice(s) to Megadata.

12.     Between January and October 2011, Megadata paid some of the invoices in full, made partial payments on others, and failed to make any payment on others.

13.     Consequently, on July 1, 2011, Tammy Gregory from Accuvant's Operations Department emailed Megadata's CEO, Rob Stringfellow, to request payment on all outstanding invoices.  (*See,* (07.01.11) Email String Between T. Gregory and R. Stringfellow, attached as **Exhibit 1.**)  At that time, the outstanding amount owed to Accuvant on issued invoices was $165,212.20.  Accuvant had not at that time invoiced Megadata for an additional $41,800.00.

14.     In response to Gregory's email, Stringfellow apologized for his delay in making payments and promised to pay all of Accuvant's outstanding invoices.  (*Id.*)

15.     Additionally, Stringfellow advised Gregory that Megadata had received $91,000 in payment from TriWest on one of the outstanding invoices.  (*Id.*)

16.     Stringfellow also stated in his email: "I apologize for the situation we have put Accuvant in and moving forward we will release our agreed upon 2% back to Accuvant, to include paying back any other previous payments that [were] given to us." (*Id.*)

17.     Following Stringfellow's July 1, 2011 email, Megadata made some partial payments against the outstanding balance.

18.     However, despite the assurances in Stringfellow's July 1, 2011 e-mail, by September 2011, Megadata still owed Accuvant for unpaid invoices.

19.     Accordingly, on September 8, 2011, Gregory again emailed Stringfellow to request payment of the outstanding balance. (*See* 09.28.11 Email String Between T. Gregory and R. Stringfellow, attached as **Exhibit 2.**)

20.     A week later, on September 13, 2011, Accuvant's Account Manager for Megadata (Matt Riley) emailed again to ascertain the status of payment. (*Id.*)

21.     Riley requested payment from Stringfellow yet again on September 28, 2011. (*Id.*)

22.     Despite Stringfellow's assurances that Megadata would pay all of the outstanding invoices on September 30, 2011, Stringfellow claimed that the actual amount owed was only $47,736.96, far less than the amount Megadata actually owed Accuvant.

23.     Upon information and belief, when calculating the amount that Megadata owed to Accuvant, Stringfellow excluded amounts that he mistakenly believed that TriWest paid to Accuvant directly for products and/or services ordered pursuant to Megadata purchase orders.

24.     Any direct payments that TriWest has made to Accuvant related to products and/or services TriWest ordered directly from them.

25.     TriWest has never made a direct payment to Accuvant for any of the products ordered from Accuvant pursuant to a Megadata purchase order.

26.     Accordingly, Megadata is not entitled to any offset of the outstanding balance for amounts that it – mistakenly – believes was paid for directly by TriWest.

27.     In October 2011, Megadata made its last partial payments against the outstanding balance.

28.     To date, Megadata still owes Accuvant $70,484.56 for unpaid invoices, exclusive of interest.

29.     Specifically, on March 23, 2011, Megadata issued a purchase order to Accuvant for a CORE Impact Machine and corresponding training sessions.  (*See* (03.23.11) Purchase Order, attached as **Exhibit 3.**)

30.     On March 25, 2011, Accuvant issued an invoice to Megadata for the products and services ordered on March 23, 2011 in the amount of $32,830.00.  (*See* (03.25.11) Invoice, attached as **Exhibit 4.**)

31.     Accuvant's March 25, 2011 invoice states:  "All invoices are due net 30 days from date of invoice.  Any invoice over 30 days will be subject to a 1.5% late charge per month." (*Id.*)

32.     Pursuant to the Megadata purchase order, Accuvant delivered the CORE Impact Machine and training sessions to TriWest.

33.     To date, Megadata has not made any payments to Accuvant pursuant to Accuvant's invoice.

34.     Upon information and belief, Megadata has received payment from TriWest for the products and services delivered pursuant to the March 23, 2011 Megadata purchase order and Accuvant's March 25, 2011 invoice.

35.     Specifically, on September 22, 2011, Corey Reichert, a TriWest employee, sent an email to Stringfellow and Armon Harris, another Megadata employee, stating that "the Core Impact license and training have already been paid for." ((09.28.11) Email String between A. Harris and C. Reichert, attached as **Exhibit 5**.)  In response, Harris confirmed that Megadata received payment from TriWest. (*Id.*)

36.     Additionally, on November 29, 2010, Megadata ordered a number of products and services from Accuvant to be shipped to TriWest the cost of which was $132,207.37.  This purchase order included 220 consulting hours, which cost $41,800.  (*See* (11.29.10) Purchase Order, attached as **Exhibit 6**.)

37.     Accuvant invoiced Megadata for the products and services on the November 29, 2010 purchase order in two installments.  First, Accuvant sent Megadata an invoice in the amount of $91,041.12 on December 3, 2010.  (*See* (12.03.10) Invoice, attached as **Exhibit 7**.) Second, Accuvant sent Megadata an invoice on July 8, 2011 for the consulting hours in the amount of $41,800.  (*See* (07.08.11) Invoice, attached ad **Exhibit 8**.)

38.     Megadata paid the invoice for the consulting hours in September 2011.  However, Megadata only made partial payments against the December 3, 2010 invoice in August 2011.

39.     Currently, Megadata still owes $42,041.12 on the December 3, 2010 invoice.

40.     Accuvant's December 3, 2010 invoice states:  "All invoices are due net 30 days from date of invoice.  Any invoice over 30 days will be subject to a 1.5% late charge per month." (*See* **Exhibit 7**.)

41.     Upon information and belief, Megadata has received full payment from TriWest for the products and services delivered pursuant to December 3, 2010 invoice.

42.     Specifically, on March 30, 2011, Harris confirmed in an email to Riley that Megadata had received TriWest's check for the products and services subject to the December 3, 2010 invoice.  (*See* (03.30.11) Email String between A. Harris and M. Riley, attached as **Exhibit 9** (stating, "Great news, we have the McAfee check.  Will process by the end of the week.  Our take for the $92K check is $1858.20").)

43.     On April 7, 2011, Accuvant's Gregory contacted Harris to ascertain the status of outstanding payments owed.  (*See* (04.08.11) Email String between A. Harris and T. Gregory, attached as **Exhibit 10**.)  In response, Harris stated that he would process another check he had received from TriWest.  (*Id.*)

44.     As a result of Metadata's deliberate refusal to pay to Accuvant the outstanding balance that it owes – despite Megadata's CEO's assurances that Megadata will pay the entire outstanding balance – Accuvant has been damaged in an amount to be proven at trial but believed to exceed $100,000.  Specifically, Megadata still owes $70,484.56 in unpaid invoices, plus interest accruing at a rate of 1.5% per month.  As of the date of this Complaint, the total amount owed, inclusive of interest, is $91,362.84  Accuvant's damage is continual in that the total amount of its damages increases each month that Megadata withholds payment on Accuvant's invoices.

## COUNT I
### (BREACH OF CONTRACT:  MARCH 25, 2011 INVOICE)

45.     Accuvant incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

46.    In March 2011, Accuvant and Megadata entered into a contract for the sale of goods and services as evidenced by the March 23, 2011 purchase order (Exhibit 3) and the March 25, 2011 invoice (Exhibit 4).

47.    Accuvant discharged its obligation under that contract by delivering the goods and services that were the subject of the March 23, 2011 purchase order.

48.    In failing to pay the $32,830.00 that Megadata currently owes Accuvant for goods and services it received, Megadata breached the contract.

49.    WHEREFORE, Accuvant prays for compensatory damages in the total amount of $39,231.85 ($32,830.00 plus $6,401.85 in interest, accruing since April 25, 2011 at the rate of 1.5% per month).

## COUNT II
### (BREACH OF CONTRACT:  DECEMBER 3, 2010 INVOICE)

50.    Accuvant incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

51.    In November 2010, Accuvant and Megadata entered into a contract for the sale of goods and services as evidenced by the November 29, 2010 purchase order (Exhibit 5) and the December 3, 2010 invoice (Exhibit 6).

52.    Accuvant discharged its obligations under that contract by delivering the goods and services that were the subject of the November 29, 2010 purchase order.

53.    Megadata has failed to make full payments against the December 3, 2010 invoice and still owes Accuvant $42,041.12 for goods delivered and services rendered.

54.    WHEREFORE, Accuvant prays for compensatory damages in the total amount of $52,130.99 ($42,041.12 plus $10,089.87 in interest accruing since January 3, 2011 at the rate of 1.5% per month).

## COUNT III
### (ALTERNATIVE COUNT FOR UNJUST ENRICHMENT)

55.     Accuvant incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

56.     As a result of Megadata's conduct in failing to pay Accuvant in exchange for the goods they delivered and services rendered after receiving payment itself from TriWest, Megadata has been unjustly enriched at the expense of Accuvant.  The law, therefore, implies a contract by which Megadata must pay to Accuvant the amount which, in equity and good conscience, Megadata has been unjustly enriched at its expense.

57.     WHEREFORE, Accuvant pray for compensatory damages in an amount to be proven at trial but believed to exceed $100,000.

### PRAYER FOR RELIEF

WHEREFORE, Accuvant respectfully request that this Court enter an order awarding it an amount to be proven at trial but believed to exceed $100,000, plus pre and post-judgment interest, and such other relief that this Court deems just and proper.

Dated:  June 5, 2012

Respectfully submitted,

Christopher W. Healy (*pro hac vice motion to be filed*)
REED SMITH LLP
599 Lexington Avenue
22nd Floor
New York, NY 10022
Telephone:  (212) 549-0403
Fax:  (212) 521 5450
chealy@reedsmith.com

Helenanne Connolly (Bar No. 18233)
REED SMITH LLP
3110 Fairview Park Drive, Suite 1400
Falls Church, VA 22042
Telephone: (703) 641-4504
Facsimile:  (703) 641-4340
hconnolly@reedsmith.com

*Counsel for Plaintiff*